UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-21158-CR-JORDAN/McALILEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| vs. | : |
| | : |
| MICHAEL McNERNEY | : |
| _____ | : |

**DEFENDANT'S STATUS REPORT REGARDING DISCOVERY**

Defendant MICHAEL J. McNERNEY, through counsel, respectfully files this report to inform the Court of the status of discovery in advance of the status conference scheduled for August 20, 2009, at 9:00 a.m.

1. The indictment in this case was filed on December 23, 2008.

2. On Saturday, July 18, 2009, the defendants received one 300 gigabyte hard drive from the government's primary vendor, CACI, Inc., which contained the first items of discovery received to date.[1]

---

[1] In its recently-filed response to the motion for a status hearing, (Doc. #212), the government asserts that defense counsel contributed to the delay in their receipt of the discovery by negotiating over the price of the vendor's services and by changing the format in which the defense wanted the discovery. That assertion misinforms. The government did not provide its discovery to the vendor, CACI, until several months after the return of the indictment. Then, despite numerous requests, the government refused to provide the defense with the name of the vendor until Magistrate Judge McAliley, at the June 9, 2009, hearing on the government's motion for a protective order regarding confidential information, ordered the government to disclose the vendor's name. At that point, CACI was not ready to produce any electronic media to the defense. When CACI was finally ready to produce the first batch of discovery in early to mid July, it quoted the defense a price of $6,000.00 to obtain 320 DVDs, claiming that there were significant "project manager costs." Ultimately, CACI relented on the price and produced a single hard drive for a few hundred dollars on July 18, 2009.

3.      After copies of the hard drive received from CACI were made for each of the defendants, Mr. McNerney immediately provided it to a local IT company, Forensis, to analyze. On July 25, 2009, Forensis provided undersigned counsel with a report analyzing the contents of the hard drive. A copy of the Forensis Examination Report is attached as Exhibit A.

4.      To summarize, the hard drive contains more than 2.5 million pages of documents from six different sources, including several law firms and a state agency (the Office of the Statewide Prosecutor). The pages are contained within 47 folders (labeled MB001 through MB047), each of which contains numerous bates-prefixes reflecting boxes of documents produced by a particular source (e.g., BMM, OSP, etc.).

5.      There is no index for the 2.5 million pages on the hard drive. The documents are not searchable; each page must be individually opened on the computer to determine its content.

6.      The hard drive is replete with unexplained discrepancies that make it difficult to comprehend the discovery and efficiently exclude from review irrelevant and repetitive documents. For example, the boxes (i.e., the bates-prefixes) are not sequentially numbered within each folder. A particular folder (MB001) may contain BMM064, followed by BMM071, BMM072, and BMM094, and so on, without explanation. And, there is no method for determining why the bates-prefixes are organized in a particular way.

7. Similarly, the first batch of discovery contains 917 boxes of documents from the BMM law firm, but the bates prefixes go from BMM0001 through BMM1127, which means that there are 210 boxes from the law firm that are unaccounted for on this hard drive.

8. Likewise, it appears that there is one folder with more than 1659 files that have been duplicated. These files have been copied twice to subfolders within MB013 and MB011, which may mean that another folder has not been copied at all. Many of the additional problems with the hard drive are described in the attached letter from attorney Bennett Hirschhorn, who is also an IT specialist. *See* Exhibit B.

9. Importantly, the first hard drive provided by CACI represents only a portion of the discovery. According to CACI, a second hard drive will be produced at some point in the future. The second hard drive will contain at least 2 million additional pages. However, yesterday, CACI advised that it has not yet received all of the boxes from the government. Thus, it is not clear when this second hard drive will be produced.

10. AUSA Levi has also advised undersigned counsel that, in addition to the 4.5 million pages of documents being produced through its vendor CACI, there are additional documents, including e-mails, that will be produced directly by the government to the defense. To date, the defense has not received any of those documents.

11. In the meantime, rather than wait for the government discovery, the defendants have been diligently attempting to obtain documents from other sources. For example, on June 17, 2009, the defendants issued a subpoena to Roberto Martinez, the Receiver for

Mutual Benefits Corporation (MBC), seeking to image all of the MBC computers in the possession of the MBC Receiver. *See* Subpoena (attached as Exhibit C). On July 13, 2009, IT specialists from Forensis imaged two terabyte hard drives, which contained millions of additional documents, e-mails, and the like. Those hard drives are in the possession of the defendants. Undersigned counsel have commenced the review of those hard drives.

12. Undersigned counsel has also been diligently reviewing the first hard drive provided by the government's vendor, CACI. Undersigned counsel (Srebnick) has spent well in excess of 50 hours during the last three weeks opening the documents page-by-page in an effort to determine if they are organized in any way that will allow the defense to exclude large categories of irrelevant documents from needless review. This has proved to be a monumental task.

13. The various defense lawyers have also been in constant communication, by conference call and joint meetings, in an effort to determine the most cost-effective way to organize and manage the discovery.

14. Because it will be physically impossible (and wasteful) to review 4.5 million pages of documents, defense counsel have investigated the possibility of having the documents "OCR'd" (optical character recognition) to make them searchable using search terms.

15. The government's vendor, CACI, gave a price quote to the defense of more than $150,000 to OCR the government's discovery. Because the defendants do not have the

financial ability to pay the price quote of the government's vendor, defense counsel have arranged for three IT vendors to make presentations and a "webinar" to demonstrate how the discovery provided by the government's vendor can be organized, managed, and reviewed in a cost-effective manner. Those presentations took place on August 11 and August 13. The defendants are currently attempting to reach an agreement among themselves on the selection of a vendor.

16. Mr. McNerney wishes to be tried as soon as practicable, but with counsel who are well-prepared.

17. Trial is currently scheduled for February 14, 2011. The government's preliminary exhibit list is due January 31, 2010. The deadline for filing a severance motion is currently August 28, 2009.

18. In its recent response (Doc. #212), the government asserts that the deadline for filing severance motions "should in no way depend on the time needed to review and analyze the voluminous discovery in this case." But, in the excerpt from the status conference quoted by the government, this Court indicated that it expected the motions to be "fully supported by affidavits, *documents, exhibits*, whatever else you want." Tr. May 7, 2009, at p.16 (emphasis added). The defendants only recently received the first batch of 2.5 million pages of *documents* and *exhibits* from the government's vendor. The defendants cannot possibly conduct a meaningful review of those documents and exhibits in sufficient time to incorporate them into a severance motion.

19. Accordingly, undersigned counsel submit this report in advance of the status conference so that the Court is aware of the status of discovery in evaluating the defendants' request to extend the deadline for filing a severance motion.

Respectfully submitted,

| | |
|---|---|
| /s Scott A. Srebnick | Jose M. Quinon |
| SCOTT A. SREBNICK, ESQ. | JOSE M. QUINON, ESQ. |
| (Fla. Bar No. 872910) | (Fla. Bar No. 201944) |
| SCOTT A. SREBNICK, P.A. | 2333 Brickell Avenue, Suite A-1 |
| 201 South Biscayne Boulevard, #1380 | Miami, FL 33129 |
| Miami, FL 33131 | 305-858-5700 |
| 305-285-9019 | jquinon@quinonlaw.com |
| scott@srebnicklaw.com | |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was electronically filed by CM/ECF this 18th day of August, 2009.

/s/ Scott A. Srebnick
Scott A. Srebnick