UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21158-Cr-JORDAN
Magistrate Judge McAliley

UNITED STATES OF AMERICA

v.

JOEL STEINGER,
    a/k/a "Joel Steiner,"
STEVEN STEINER,
    a/k/a "Steven Steinger,"
MICHAEL McNERNEY, and
ANTHONY LIVOTI, JR.,

        Defendants.
_____ /

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT MCNERNEY'S MOTION TO FILE SIGNED *BYRD* AFFIDAVIT UNDER SEAL

COMES NOW the United States, by and through the undersigned Assistant United States Attorney, and files this Response in Opposition to defendant Michael McNerney's Motion to File Signed *Byrd* Affidavit Under Seal,[1] stating as follows:

### INTRODUCTION AND STATEMENT OF FACTS

Co-defendant's Joel Steinger ("Steinger") and Anthony Livoti ("Livoti") have each filed motions for severance from defendant Michael McNerney ("McNerney"), claiming that McNerney has agreed to testify on their behalf if he is tried separately.[2] In support of these

---

[1] McNerney's codefendants have joined in McNerney's motion, but their motions to join provide no independent bases for seeking to file the Affidavit *ex parte* and under seal.

[2] McNerney has also filed his own motion for severance. While McNereny's motion does not specifically reference his *Byrd* Affidavit, since the government has not seen the Affidavit, it can not determine whether the Affidavit contains statements that relate to McNerney's severance motion as well.

motions, McNerney has prepared and executed an apparently lengthy affidavit (the "Affidavit") which describes his willingness to testify, and the substance of the testimony which he supposedly would offer on behalf of his co-defendants at a separate trial. Based on statements in the Steinger severance motion, the Affidavit has at least 111 paragraphs.

McNerney has provided unsigned copies of this lengthy Affidavit to his co-defendants, and they have relied on it to form the basis for their motions to sever. By contrast, no copy of the Affidavit (either unsigned or signed) has been provided to the government, even though it is liberally quoted and paraphrased by Steinger in his severance motion. In addition, although the defendants first informed the Court that these severance motions would be coming as early as February 6, 2009, none of the them ever raised the issue of sealing the Affidavit until McNerney sought the government's position on the eve of filing this motion on January 22, 2010.

The Affidavit at issue in McNerney's motion to seal forms the entire basis for his co-defendants' severance motions. These severance motions seek to force the Court and government to resolve this case through two, or even three, lengthy and involved trials. As will be explained in detail in the government's subsequent response opposing the severance motions, the resolution of the severance issue relies on an assessment of the substance, importance, completeness, credibility, and reliability of the Affidavit within the full context of the charges arising from the massive and long-running fraud perpetrated by the defendants and their co-conspirators. Preventing the government from having access to the Affidavit when responding to these motions (which include selective citations to,

paraphrasing from, and characterizations of, the Affidavit) would unfairly put the government at a significant disadvantage in connection with this extremely important issue.[3]

## MEMORANDUM OF LAW

Defendant McNerney asserts that he "is entitled by law to file his affidavit *ex parte* and under seal" because it is "the accepted practice to protect the rights of the testifying codefendant" (Mot. at p. 2, ¶¶5-6). In support of these sweeping assertions, he cites to one unpublished district court decision from California, which is neither binding nor persuasive authority. In that decision, *United States v. Reyes*, 2007 WL 963246 (N.D. Cal. March 29, 2007), the district court granted a severance based on the information provided *ex parte* after simply dismissing the government's objections to that procedure. Acknowledging that the *ex parte* procedure denied the government "the opportunity to meaningfully address the factors related to the testimony," the *Reyes* court found nothing improper about that disadvantage, and noted that no authority prohibited the *ex parte* procedure, which has been used in other cases.

Most telling about *Reyes* is its lack of any explanation for the conclusion that it is proper to take a drastic step such as severance in a fraud case without giving the government a full and fair opportunity to respond to the substance of the motion to sever.

---

[3] The impact of granting one or both of these severance requests cannot be overstated. Because of the massive scope and duration of the fraud, requiring the government to try this case two, or even, three times, would put an incredible hardship on numerous civilian witnesses (including many victims), undermine the significant interests of judicial economy and efficient administration of the docket, and consume enormous amounts of law enforcement and prosecutorial resources. As such, this case stands out from most of the cases cited by McNerney in his motion, which dealt with relatively short trials and simple, facially insufficient affidavits.

3

While such a procedure might present little peril in short or simple cases, or in cases where the proposed testimony in issue is little more than self-serving and conclusory denials of the allegations in an indictment, that is not the case here. Severance could create the hardship of two or more lengthy trials, and according to Steinger's motion, the Affidavit is at least 111 paragraphs long, purportedly filled with detailed and fact-specific proffered testimony. In the specific circumstances of this case, fairness dictates that the government have access to the Affidavit to allow a full and complete response in opposition to the severance motions.

In support of his claim that sealed *ex parte* filing of the Affidavit is the "accepted" practice, McNerney cites to no Eleventh Circuit cases, relying instead on one decision from another circuit, and two district court decisions from outside the Southern District of Florida. *These cases are United States v. Ortiz*, 942 F.2d 903, 914 (5th Cir. 1991); *United States v. Friske*, 2009 WL 1515393 (N.D. Fla. 2009) (unpub.); *United States v. Gianelli*, 585 F.Supp.2d 186, 195 (D. Mass. 2008). He cites to no rule, statute, or binding precedent that holds that this Court must, or even should, allow the *ex parte* sealed filing requested in this motion. Moreover, none of the three decisions he cited as exemplifying this purportedly "accepted practice" includes any discussion of the propriety of allowing the affidavits to be submitted *ex parte*.[4] Also, none of those cases even support, let alone even

---

[4]Although the opinion in *Ortiz* mentions that the affidavit in support of severance was sealed, there is no indication that it was actually submitted to the district court *ex parte*. Based on that opinion and the appellate briefs, it appears that the district court in *Ortiz* summarily denied the defendant's severance motions without requiring a response from the government. *Ortiz*, 942 F.2d at 914. Thus, the Fifth Circuit's decision in *Ortiz* does not specifically condone a practice of employing *ex parte* filing of affidavits in support of severance motions.

In *Friske*, the defendant originally had filed a severance motion that included an

4

mention, McNerney's claim that the purpose of filing affidavits *ex parte* and under seal is to protect the testifying codefendants' rights.[5]

In *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108 (1974), the Supreme Court explained the importance of a complete adversarial system in criminal cases, " in which the parties contest all issues before a court of law."  It also noted that "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts."  *Id*.  Likewise, the Ninth Circuit in *United States v. Thompson*, 827 F.2d 1254 (9th Cir. 1987), explained: "situations

---

unsealed affidavit in support of the motion, which the district court denied.  The defendant later renewed the motion and supported it with a supplemental affidavit that was sealed and not provided to the government.  The district court in *Friske* denied the renewed severance motion as untimely and after concluding that the defendant did not need the testimony to present his theory of the case. 2009 WL 1515393 at *1.  In denying the renewed motion, the court appeared to rely only on the portion of the affidavit that was also referenced in the renewed motion, which was not sealed. *Id.* Therefore, the government was not unduly disadvantaged by the filing of a sealed supplemental affidavit when that affidavit was made available to the government. Moreover, nothing in the opinion advocates or supports the practice of filing such affidavits *ex parte* and under seal.

In *Gianelli*, the district court also did not advocate or endorse the *ex parte* filing of affidavits in support of a defendant's severance motion.  Also, although the defendant filed the affidavit *ex parte* and under seal, the court's order denying severance was not based on its contents.  Instead, the court denied the motion after concluding that the requested severance was unjustified because "[a]ny testimony proffered by [the codefendant husband] would be subject to substantial and damaging impeachment given his criminal history and his relationship with the defendant . . ." *Gianelli*, 585 F.Supp.2d at 195.  Therefore, the inaccessibility of the *ex parte* affidavit did not unduly prejudice the government.

[5]The codefendants, in their motions seeking to join in McNerney's motion to seal, also have not identified which of their own rights, if any, would be at risk if the court were to deny the motion and require McNerney to provide the government with full access to the Affidavit so that it might properly respond to the severance motions.

where the court acts with the benefit of only one side's presentation are uneasy compromises with some overriding necessity, such as the need to act quickly or to keep sensitive information from the opposing party. Absent such compelling justification, *ex parte* proceedings are anathema in our system of justice and, in the context of a criminal trial, may amount to a denial of due process." *Id.* at 1268-69 (footnote omitted).

While some courts have allowed the *ex parte* submission of proffered testimony in support of severance motions, it should not be allowed in the instant matter because *ex parte* proceedings are not favored and in due to the unique facts and circumstances of this case. Given that the consequences of severance are so significant and potentially prejudicial to the government, fundamental fairness requires that the government be provided the Affidavit (or at least the unsigned version provided to and relied on by the co-defendants) so that it has a meaningful opportunity to fully respond to the severance motions.

Access to the Affidavit is crucial in this case is because a court's decision to sever, based on the need to obtain co-defendant testimony, must ultimately be premised on a factual evaluation of the substance and value of the proffered testimony within the context of a specific case. *See e.g. United States v. Browne*, 505 F.3d 1229, 1269-70 (11th Cir. 2007); *United States v. Novaton*, 271 F.3d 968, 989 (11th Cir. 2001) ("This Court's cases addressing severance motions have often looked hard at the substance of the affidavits proffered by the co-defendant who purportedly would testify in a separate trial.").

In this case, where the fraud was elaborate, extensive, and multi-faceted (and will be proved by testimony from a variety of cooperating co-defendants, other MBC employees or associates, retained professionals, and victims of the fraud), the legal insufficiency of the

6

McNerney Affidavit may not be evident on its face upon *ex parte* review by the Court. With access to the Affidavit, the government will be able to provide a meaningful, complete, and focused factual and legal response showing why the Affidavit does not satisfy the standard, and why the severance motions should be denied. Without such access, the government runs the risk that important issues may go unaddressed, and as a result the Court might improvidently grant one or more of the severance motions.

By allowing a codefendant to submit an *ex parte* affidavit, the government is denied a truly meaningful opportunity to respond to the severance motion, which was the exact concern acknowledged in *United States v. Fastow*, 269 F.Supp.2d 905, 910 (S.D. Tex. 2003), where the district court denied a motion to arrange the order of the trials to allow Fastow to delay her trial to obtain the purportedly favorable testimony of her husband after his trial. That court specifically acknowledged that Fastow's filing of her husband's affidavit *ex parte* had deprived the government "of the opportunity to meaningfully address the factors related to the testimony itself*." Id*.

McNerney's conclusory assertion that his rights can only be protected by denying the government access also rings hollow. First, McNerney has not identified which of his rights, constitutional or otherwise, require protection in the form of an *ex parte* submission of his Affidavit supporting his codefendants' severance motions. Moreover, any vague right for which he seeks protection appears to have been waived in light of Steinger's already extensive citation and reference to portions of the Affidavit in his severance motion. Steinger quotes and paraphrases liberally, at least from those portions that he believes

7

advance his argument.[6]  With so much in the record in a one-sided fashion, it should be incumbent on McNerney to explain what compelling prejudice could possibly arise from giving the government a full and fair opportunity to review the Affidavit in order to respond to these crucial motions.

The risk of prejudice to McNerney as a result of disclosure of the Affidavit seems particularly remote in this case, where the Affidavit apparently deals with an advice of counsel defense.[7]  In this context, it is likely that McNerney will deny knowing about the wrongdoing at the heart of the fraud (*i.e.* lying to investors, paying off doctors to prepare false life expectancies, knowingly re-selling failed and/or worthless policies), and will deny having done anything but provide honest legal advice.  In light of the voluminous evidence to the contrary, this is likely to be self-serving and exculpatory, exactly the type of proffered testimony that is deemed not credible and insufficient to form the basis for severance.  Without access to the Affidavit, the government can only make reasonable assumptions, and will not be able to produce a helpful, thorough, and efficient response to the severance

---

[6] An initial review and comparison of the Steinger and Livoti severance motions illustrates the inherent difficulty in requiring the government to respond without access to the Affidavit.  At page 25 of his motion, Steinger quotes a portion of the Affidavit that "I [McNerney] am unequivocally willing to be called as a witness by any one of my co-defendants at their trial."  However, at page 8 of his motion, Livoti states that McNerney is willing to testify "provided his trial goes first."  This is a significant difference on even a simple but important point.  Having no access to the Affidavit, the government cannot determine which is the correct statement.  While this might be a rather simple point for the Court to determine on its own, sorting out the case-specific factual issues that are at the heart of this severance decision will be an arduous and perhaps impossible task for the Court if the government is not allowed to have access to the Affidavit when preparing its response.

[7] McNerney's codefendants advised the court that they would assert an advice of counsel defense, relying on McNerney's testimony, long before filing severance motions or an *ex parte* affidavit purportedly supporting those motions (*see* transcript of February 6, 2009 motion hearing at 10-11, 14).

motions to aid the Court in coming to the correct and fair resolution of this extremely important issue.

## CONCLUSION

WHEREFORE, because McNerney has not demonstrated any compelling need to submit his Affidavit in support of his codefendants' severance motions *ex parte* and because the government has an overriding need to obtain access to the entire Affidavit in order to properly respond to the pending motions, the government respectfully requests that this Court deny the motion to seal McNerney's Byrd Affidavit, and either require that it be provided in full to the government, or allow McNerney to withdraw it .

        Respectfully submitted,

        ROBERT K. SENIOR
        ATTORNEY FOR THE UNITED STATES
        Under Authority Conferred by 28 U.S.C. § 515

By:    s/Andrew K. Levi
        Andrew K. Levi
        Assistant United States Attorney
        Florida Bar Number 0048774
        99 N.E. 4th Street, 4th Floor
        Miami, FL 33132
        (305) 961-9273
        Fax: (305) 530-6168
        E-mail: Andrew.Levi@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on February 8, 2010.

                                                        s/Andrew K. Levi
                                                          Andrew K. Levi
                                                          Assistant United States Attorney